JOHN M. PINKERTON *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

A petition against a railroad corporation to recover damages for the taking of land alleged a location over part of the land by a former railroad corporation; a consolidation of such corporation into the respondent corporation; a subsequent location by the respondents "in place of that previously made," whereby they "adopted and confirmed as their own" the former location and taking; and "that by the location of said road and taking aforesaid" the petitioner sustained damage. *Held*, that the petitioner could recover not only for the land taken by the former location, but also for additional land included in the new location.

The owner of land included in the location of a railroad company petitioned for an assessment of damages. Subsequently the company filed an abandonment of so much of the location as included the petitioner's land, and tendered him a deed releasing the same, both the abandonment and deed containing a condition that they should respectively be void if the company could not make them without affecting their right to other lands taken under the location. *Held*, that the abandonment and tender were not a bar to the petition, even if they went in reduction of damages.

One who had agreed to purchase land refused to complete the contract; the seller brought a suit in equity for specific performance thereof; a decree was rendered against the purchaser for the full contract price, which he paid, and the seller gave him a deed of the land of the date of the contract. While the suit was pending, part of the land was

taken for a railroad. *Held*, that the purchaser could maintain a petition in his own name against the railroad company to recover damages for the land taken.

The location by a railroad company of a part of its road closed thus: To a certain point, and thence "about 600 feet into Depot No. 1," (a parcel of land belonging to the company.) "The above described line is the centre line of the railroad, and is traced in blue on the accompanying plan." The plan was filed with the location. The blue line on the plan extended across the street on which Depot No. 1 was situated, and into Depot No. 1; but a measurement of six hundred feet according to the plan from the said point extended into said street, but not quite across to Depot No. 1. The location defined its . width as far as the street, but neither the location nor the plan defined it any farther. *Held*, that the location did not cover any part of Depot No. 1. Wells, J., dissenting.

PETITION to the superior court, alleging that " the petitioner on November 5, 1869, made application, as provided by statute, to the board of aldermen of the city of Boston, for an estimate of damages against the Boston and Albany Railroad Company, occasioned by the location of their railroad and track over the land of the petitioner in East Boston, as is set forth in said application to said board," and that the board rendered " a nominal award of damages to the petitioner of one dollar " against the company. The petition to the board of aldermen, a copy of which was annexed, alleged that the petitioner on March 1, 1866, became seised and possessed by purchase, as owner thereof, of a parcel of land on Marginal Street in East Boston, measuring seventy feet thereon, and four hundred and fifty feet in depth ; that on November 22, 1866, the Boston and Worcester Railroad Corporation did, by virtue of the St. of 1866, *c.* 278, take a portion of the land belonging to the petitioner, to wit, " the easterly part or portion thereof, which is bounded on Marginal Street, the whole of said parcel of land having but seventy feet frontage on said Marginal Street, and the only access to said land being from said front on said Marginal Street ; that the said corporation, by locating and laying their tracks upon and over a part of said front, crossing the same diagonally, have greatly impaired and injured the said access to said land, and thereby have greatly diminished the value of the whole of said land, besides the value of the land taken ; that on November 26, 1866, the Boston and Worcester Railroad Corporation filed with the board of aldermen of the city of Boston, the taking of the property and the location of their road thereupon ; that " by the St. of 1867, *c.* 270, " the

Boston and Worcester Railroad Corporation and the Western Railroad Corporation were authorized and empowered to unite and consolidate their respective corporations, under the title of the Boston and Albany Railroad Company, with all the powers and privileges, and subject to all the duties and liabilities in force, relating to railroad corporations ; that said Boston and Albany Railroad Company made on May 27, 1868, a new location of their roads and tracks in East Boston, in place of that previously made by the Boston and Worcester Railroad Corporation, and filed said location and taking of said land with the board of aldermen, and thereby adopted and confirmed as their own the said location and taking of the Boston and Worcester Railroad Corporation, so far as the same extended upon and over the land of your petitioner, as hereinbefore set forth ; and that by the location of said road and taking of the land aforesaid," the petitioner sustained damage. The answer, among other things, admitted that the respondents, by virtue of the St. of 1867, *c.* 342, filed a new location on May 30, 1868, which included a portion of the land claimed by the petitioner, not included in the location of 1866, but alleged that they had tendered a release of such additional portion to the petitioner. Trial before *Pitman,* J., who reported the case for the determination of this court, substantially as follows :

The land claimed by the petitioner was part of a large tract conveyed by S. S. Lewis to the Grand Junction Railroad and Depot Company in 1847, and known as " Depot No. 1." In 1850, the Grand Junction Railroad and Depot Company filed with the board of aldermen of the city of Boston a location of a part of its road in East Boston. This location extended from the line between East Boston and Chelsea by several courses to a certain point situated to the northeast of Marginal Street, and the description of the location then closed thus : " Thence on a curve to the east of about four hundred feet radius for about six hundred feet into Depot No. 1 of the Grand Junction Railroad and Depot Company in East Boston. The above described line is the centre line of the Grand Junction Railroad, and is traced in blue on the accompanying plan. The company locates forty-one and

one fourth feet on each side of said line up to the crossing of the Eastern Railroad, and from thence thirteen feet on the westerly side of said centre line, and forty-seven feet on the easterly side to Marginal Street, in East Boston, as shown on the accompanying plan." On the accompanying plan, which was filed as part of the location, the line marking the location extended across Marginal Street into Depot No. 1, cutting off a front corner of what is now the land claimed by the petitioner, but a measurement of exactly six hundred feet according to the plan from said certain point extended nearly to the western side of Marginal Street, but not beyond it, and the plan did not define the width of the location beyond Marginal Street. Within a year after the filing a railroad was laid down upon the location, was then and afterwards used by the Grand Junction Railroad and Depot Company over and across the petitioner's land on to the adjoining land, connected the Grand Junction Railroad with another railroad, and has ever since remained nearly in the same position.

In 1853, the Grand Junction Railroad and Depot Company mortgaged the land now claimed by the petitioner to William Whiting and Charles J. Hendee. On March 1, 1866, the petitioner agreed in writing to buy the land from Whiting and Hendee at forty-two cents the square foot, and on March 20 they tendered him a deed of the premises, which he refused to accept " on the ground that they could not make a good and indefeasible title to the premises, and on other grounds." In the following June, they brought a bill in equity against him for specific performance of the agreement to buy, and after the decision reported in *Hendee* v. *Pinkerton*, 14 Allen, 381, a decree was entered in favor of the plaintiffs in that suit on June 3, 1867, by which the petitioner was ordered to pay the full amount of the purchase money, and within a month the petitioner accepted the deed, which was dated March 1, 1866, and paid the purchase money. The respondents were not parties to this bill.

On November 26, 1866, the Boston and Worcester Railroad Corporation, under authority of the St. of 1866, *c.* 278, filed a location covering all that part of the land claimed by the petitioner which was covered by the location of the Grand Junction

Railroad and Depot Company, giving that location the widest extent contended for, and also another part of the land claimed by the petitioner.

The Boston and Worcester Railroad Corporation and the Western Railroad Corporation were consolidated into the respondent corporation by the St. of 1867, *c.* 270, and on May 30, 1868, the respondents filed a new location of their road in East Boston, by which they took all of the land claimed by the petitioner which was included in the location by the Boston and Worcester Railroad Corporation in 1866, and also an additional part of said land.

On February 18, 1871, the respondents' directors voted to authorize their president to abandon or release to the petitioner such part of his land as the president might think expedient, and to file with the board of aldermen such abandonment or relocation of their railroad in East Boston as might be necessary. On March 2, 1871, the respondents filed a document under their corporate seal with the board of aldermen, in which they varied the location of the railroad by abandoning and releasing so much of the petitioner's land, included in their location of 1868, as was not included in the location by the Boston and Worcester Railroad Corporation in 1866, provided however that this abandonment and release should be void and of no effect if they could not legally make it without affecting their right to other lands taken under the location of 1868 ; and the respondents tendered a deed of release and quitclaim to the petitioner, conveying to him the same lands on the same proviso as described and set forth in said document, but the petitioner refused to accept it.

The respondents requested the judge to rule that by the loca tion filed in 1850 by the Grand Junction Railroad and Depot Company, and by the use and construction of tracks over and upon a portion of the land claimed by the petitioner, such portion became a part of the location of said company ; that the mortgage to Whiting and Hendee was subject to such location, that on November 26, 1866, the petitioner had no such interest in the land claimed by him as entitled him to damages for the location filed on that day ; that, if he was so entitled, he could

recover no damages for the taking by the location of 1866 of land covered by the location of 1850 ; that he could not recover damages for the taking of any land included in the location of 1868, which was not included in the location of 1866 ; that he could not recover damages for the taking of any land under the location of 1868 which was included in the location of 1866 ; that damages for the locations of 1866 and 1868 could be recovered only upon separate petitions ; and that if the additional land taken by the respondents under the location of 1868 had not been entered upon by them for the purpose of constructing their road, the document filed with the board of aldermen and the deed tendered to the petitioner were a release of the same, and the petitioner was entitled to no damages therefor.

The judge refused so to rule, and ruled that the petitioner was entitled to recover damages for all that part of the land conveyed to him by Whiting and Hendee which was included in the location of the respondents in 1868, and for injury to the remainder, without regard to the previous locations, but that an attempt to abandon and release the same and a tender of a deed to the petitioner were proper for the consideration of the jury in reduction and mitigation of damages.

The judge requested the jury to answer certain questions, which, with the answers, are given below.

First. " What was the damage to the petitioner by the location of 1868, assuming that this location covered all prior locations ? " Answer. " $5407, including interest."

Second. " What was the damage from the taking in 1868 of the land not included in the location of 1866 ? " Answer. " $3600."

Third. " What was the damage from the location of 1866, upon the basis of the value of land at that time ? " Answer. " $1035."

Fourth. " If the respondents acquired a right to the land covered by the location of 1850, what were the damages for the additional land taken in 1866 ? " Answer. " $125."

*G. S. Hale*, for the respondents. 1. Under this petition, only damages for the location by the Boston and Worcester Railroad Corporation in 1866 can be assessed.

2. The respondents could vary and abandon their location of 1868, if they never entered upon nor occupied it. *Boston & Providence Railroad Co.* v. *Midland Railroad Co.* 1 Gray, 340. *Fitchburg Railroad Co.* v. *Boston & Maine Railroad*, 3 Cush. 58, 81. *Carpenter* v. *County Commissioners*, 21 Pick. 258. *La Croix* v. *Medway*, 12 Met. 123. *New Bedford* v. *County Commissioners*, 9 Gray, 346. *Drury* v. *Boston*, 101 Mass. 439. *Haynes* v. *Haynes*, 1 Drew. & Sm. 426. Gen. Sts. *c.* 63, § 21 ; *c.* 43, § 14.

3. The petitioner had no such interest in November 1866 as entitled him to damages for the location filed at that time. *Boynton* v. *Peterborough & Shirley Railroad Co.* 4 Cush. 467, 469. *Davidson* v. *Boston & Maine Railroad*, 3 Cush. 91, 107. *Rand* v. *Townshend*, 26 Verm. 670. *Lewis* v. *Wilmington & Manchester Railroad Co.* 11 Richardson (Law), 91. *Moore* v. *Boston*, 8 Cush. 274. *Whitman* v. *Boston & Maine Railroad*, 3 Allen, 133, 138. *Walker* v. *Boston & Maine Railroad*, 3 Cush. 1, 21. *McGrath* v. *Boston*, 103 Mass. 369. *Ellis* v. *Welch*, 6 Mass. 246, 251. *Parks* v. *Boston*, 15 Pick. 198, 203. *Bird* v. *Grand Eastern Railway Co.* 19 C. B. (N. S.) 268. *Haynes* v. *Haynes*, 1 Drew. & Sm. 426, 451. *Tasker* v. *Small*, 3 Myl. & Cr. 63, 69. Gen. Sts. *c.* 63, §§ 23, 25, 32, 34, 35, 39–42, 45, 64, 66. Lloyd on Compensation, 2. Sugd. Vend. 191. 1 Dart Vend. (4th ed.) 242. 2 Dart Vend. 877. 1 Jarm. Wills, 46–49.

4. In the location by the Grand Junction Railroad and Depot Company in 1850, "Depot No. 1" is a monument, and the location extends into it. The plan removes any ambiguity. *Henshaw* v. *Hunting*, 1 Gray, 203. *Glover* v. *Boston*, 14 Gray, 282, 285. *Andover* v. *County Commissioners*, 5 Gray, 393, 396. *Hazen* v. *Boston & Maine Railroad*, 2 Gray, 574, 579. *Blaney* v. *Rice*, 20 Pick. 62. Crocker's Forms (2d ed.) 30, and cases cited. 3 Washb. Real Prop. 348, 350, 352. The mortgage to Whiting and Hendee was void as to this part, or conveyed it subject to the location. *East Boston Freight Co.* v. *Hubbard*, 10 Allen, 459 note. *Same* v. *Eastern Railroad Co.* 13 Allen, 422.

*C. T. Russell*, for the petitioner.

Pinkerton *v.* Boston & Albany Railroad Company.

AMES, J.* The petitioner alleges, in substance, that on March 1, 1866, he became seised and possessed by purchase of the lot of land in question, and that, in November following, the Boston and Worcester Railroad Corporation, acting under legislative authority and the public right of eminent domain, took a portion of this land, to wit, the easterly portion, bounded on Marginal Street, the whole lot having a front of seventy feet only on that street, and the only access being from that front. He charges that by laying their tracks upon and over said front, crossing the same diagonally, they have impaired the access to the land, and, besides appropriating a portion to their own use, have thereby greatly diminished the value of the entire lot. He then goes on to say that the respondents, in the year 1867, were made a body corporate, by the consolidation of the Boston and Worcester Railroad Corporation and the Western Railroad Corporation, and that this new corporation (which succeeded to the rights and privileges and also to the liabilities of its respective predecessors) in May 1868 made a new location of their roads and tracks in East Boston, in place of that previously made by the Boston and Worcester Railroad Corporation, and "thereby adopted and confirmed as their own" that previous location and taking, so far as the same extended upon and over the land of the petitioner. He then avers that "by the location of said road and taking of the land aforesaid" he has sustained damage.

The first question for consideration is as to the precise subject matter of the petition. Is it a claim of damages for the taking by the Boston and Worcester Railroad Corporation in 1866, or for that by the respondents in May 1868, or for both? This question is important, for the reason that, although the deed under which the petitioner holds his title to the land bears date March 1, 1866, and although for some purposes, and so far as himself and his grantors are concerned, his title may relate back to that date, yet the deed was not delivered to him until sometime in June 1867. The question between him and his grantors, as to their right to compel him to accept the deed and pay the

---

* COLT, J., did not sit in this case.

stipulated consideration, had been the subject of litigation in the mean time, and in June 1867 was decided by a decree of the court against him. The respondents insist that upon the facts reported he had no legal estate or interest in the land in November 1866, and no right to claim damages for any of the land then taken. It is therefore material to inquire whether, by the terms of his petition, his claim is to be confined to the land then taken, or whether it may apply to land taken in May 1868.

It must be admitted that upon this point the petition is somewhat obscure. It describes the taking by the Boston and Worcester Railroad Corporation, and the damage thereby occasioned; it then, as if to explain why the claim for compensation is not prosecuted directly against that corporation, refers to the legislative action by which it ceased to exist, and its rights and liabilities were transferred to the new corporation, the respondents; and it then says that the respondents made a new location in place of the previous one, and thereby adopted and confirmed that previous one as their own. The petitioner does not say, in his complaint, what this new location made by the respondents was, or how it differed from the earlier taking; and, what is perhaps still more remarkable, he wholly fails to say that it was an enlargement of the former taking, appropriating considerably more of his land, and cutting off a much larger part of his front. The peculiar form in which the petition is expressed may have been intended for the purpose of showing that the respondents had become liable for both the locations, and that they had not only taken some of the land themselves directly, but had adopted and assumed the responsibility for that which had been taken by the Boston and Worcester Railroad Company. It is not logically correct to say that the establishment of a new location, in place of an old one, is of itself an adoption and confirmation of the old one. We do not think that the petitioner has confined himself within such narrow limits as the respondents claim that he has. He charges substantially a new taking by these respondents in May 1868. Their answer admits that there was such a new taking, including a portion of the land described in the petition, in addition to that covered by the location of 1866. It is not necessary, in petitions

of this kind, to describe in detail the extent of the damage, or the precise mode in which it occurred. It is enough to charge in general terms that a portion or the whole of some lot, specifically described, has been appropriated under legal authority to the use of the other party. We have no doubt, therefore, that the petition applies to the land taken in 1868.

The respondents then take the objection that the petitioner's claim, even when thus limited, cannot be maintained, for the reason that their directors have voted to authorize their president to release and abandon to the petitioner such part of his land as was included in the location of 1868, and not in that of 1866; and that in pursuance of this vote, a document in writing and under the corporate seal has been filed with the board of aldermen in Boston, abandoning and withdrawing so much of the location of 1868 as was taken from the petitioner's land, and not included in any previous location. And they have also tendered to the petitioner a formal deed of release and quitclaim, to the same extent. But all this took place since the petition was filed. The release, and also the deed, are accompanied with certain conditions, which perhaps are not onerous or unreasonable in themselves, but which nevertheless to some extent impair the value of the concession. It is clear, we think, that the petitioner is not bound in law to accept the release so tendered, and that the rights of the respondents in the matter were amply protected by the ruling of the court, that this attempt to abandon and release was proper for the consideration of the jury, in mitigation and reduction of damages. This was all that the respondents had a right to ask.

It is provided by the Gen. Sts. *c.* 63, § 38, that a railroad corporation, after having taken land for its road, and with a certain limitation as to time, may vary the direction of the road in the place where such land is situated, but within the limits fixed by its charter. It may perhaps be questionable whether the various statutes, under which these respondents justify their action, have not so fixed the termini and intermediate points of the road as to exclude any variation beyond those limits. *Boston & Providence Railroad Co.* v. *Midland Railroad Co.* 1 Gray, 340, 362. But however that may be, this point is not taken by the respondents

in their answer; if it were open to them, the alleged variation is made to depend upon a condition, and is accompanied with a qualification for which the statute furnishes no authority whatever. A new location, which is to be void and of no effect, if it cannot legally be made without leading to a certain other result, no provision or intimation being made in what way or at what time that contingency is to be made certain, is not the kind of variation allowed by the statute.

The result then is, that, so far as the petitioner's claim relates to damages under the location of 1868, there was no material error in the instructions to the jury.

With regard to any previous taking of the land, the respondents deny the petitioner's right to recover damages, on the ground that the legal title had not vested in him at the time. But before the filing of the location of 1866, he had made a contract for the purchase of the land, and had thereby become equitably entitled to a conveyance upon the performance of the conditions of the purchase. The price which he had agreed to pay was made up on the assumption that he was to become the owner of the entire lot, unincumbered by the action of the respondents in appropriating a portion of it to their own use. Under the decree of this court, he has been compelled to fulfil his contract, and to pay the price of the entire lot. The effect of this decree is that he gets from his grantors less than he contracted for, and that all the damage resulting from the construction of the respondents' railroad falls upon him, and not upon the parties from whom he derived his title. So far as it is a question between him and his grantors, there can be no doubt that the compensation for the taking equitably belongs to him, and not to them. If it should be paid to them, the result would be that they would be paid a second time, for what they have already sold and been paid for. They have already been paid for the entire lot, and if in addition to the price paid them they were to proceed and recover damages for land, taken after they had ceased to have the equitable title,. on the ground that they had not parted with the legal title, they would be liable for any amount so recovered to the petitioner, as his trustees. It is a mere question whether he can claim the

damages in his own name, or is bound to sue for them in the name of the grantors, in whom the legal title stood. We do not think that, in proceedings of this nature, there is any inflexible rule of law that requires the court to shut its eyes to the real interests of the parties, or to refuse to take into consideration their substantial rights and equities in relation to each other. All that the respondents are entitled to is that they shall not, after paying the damages to one party, continue liable to pay them to another. If we hold that the effect of the decree, for the purposes of this trial, is to carry the petitioner's title back to the date of the deed, (which the court has held was properly tendered and should have been accepted,) exact justice will be done, and the respondents will be protected by the judgment. In *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad Co.* 10 Cush. 385, it was decided that the owners of equitable or contingent interests might properly join with the owner of the fee in the application for damages, " and that as they would all be bound by the judgment in such case, it operates as a security to the respondents, and cannot affect them injuriously, although such petitioners are not, in a strict sense, joint owners or proprietors of the land."

For these reasons, we must hold that the petitioner is also entitled to damages for the land taken in 1866, according to its value at that time. It becomes then necessary to inquire what portion was then taken, and upon this point the court is not unanimous in the decision. The location filed by a railroad corporation, describing lands taken for the use of their road, is, in case of ambiguity, to be most strongly construed against them. A majority of the court is of the opinion that no part of the lot of land described in the petition is shown to have been included in the location of 1850. The entire lot was a portion of a larger tract known by the name of " Depot No. 1," the whole of which, in 1850, was the property of the Grand Junction Railroad and Depot Company. That corporation had no occasion to " take," or " locate," in the exercise of authority conferred by the legislature, under the right of eminent domain, a right of way over its own lands. It was vested with that right already, independently of any legislative grant. Within its own limits it had full power;

as a landowner, to lay down, and also to alter at its own discretion, such lines of track, turn-tables and sidings as it might find convenient.   The terms of the location of 1850 must be admitted to describe a line leading by various courses from the Chelsea line to and perhaps across Marginal Street.   For the purposes of location strictly so called, that is to say, for the purpose of showing what line of way is laid out, and what lands are appropriated, by authority conferred by the legislature, it was only necessary for the corporation to give a description bringing the road to the line of their own land ; or in the language of the location " into Depot No. 1."   Their description actually given is fully satisfied, without including in the location any portion of that lot, and it does not undertake to define what the line should be after it reached their boundary, or how far it should extend into their own land ; in other words, the description ceases at the point where the line reaches the boundary of " Depot No. 1."   It is true that a plan accompanies the description, and is placed on file with it, as a part of the location ; and it is true also that the line as delineated on that plan is prolonged, so as to extend somewhat into the lot of land known by that name.   But it is to be observed also that while the location defines the width of the land taken on each side of the principal line, as far as Marginal Street, neither the location itself, nor the plan filed with it, affords any means of determining such width beyond that street.   In the opinion of the majority of the court, the proper function of this plan is to aid and illustrate the written description, but not to enlarge or control it.   It was intended to show, for the purposes of location, the manner and place in which the proposed railroad entered into the corporation's own land, but not to extend the location, in the technical sense of that term, upon or over any part of Depot No. 1.

Upon the ground therefore that the location of 1850 leaves it ambiguous and uncertain, to say the least, whether any portion of that lot was taken at that time under public authority, it is held that the petitioner is entitled not only to damages for the land taken in 1868, but also for all that was included in the location filed in 1866 , and that this latter item is to be computed upon

the assumption that the respondents had acquired no right in any part of the land under any previous taking. Upon this view of the case the petitioner would be entitled to the sums assessed by the jury in their answers to the second and third questions submitted to them.

WELLS, J., dissenting. I am unable to concur with the conclusion of the majority of the court, so far as it relates to the effect of the location of 1850.

Even as between a railroad corporation, taking land by right of eminent domain, and the landowner whose land is so taken, a plan, referred to in the written statement of courses and distances, and filed with it, is competent to define the location intended; and where there is an omission in the written statement, or it is so imperfect that the lines of location could not be made out by it alone, the deficiency may be supplied by the plan. *Andover* v. *County Commissioners*, 5 Gray, 393. *Grand Junction Railroad & Depot Co.* v. *County Commissioners*, 14 Gray, 553.

But the question in this case is not of the sufficiency of the location as an exercise of the right of eminent domain. The title to the land in question was, at the time, in the railroad corporation making the location; and was a part of a larger tract designated as "Depot No. 1." If it be conceded that the location, as such, is limited by the written statement of courses, distances and breadth; and thus, although crossing Marginal Street, terminated within the street; yet it is manifest that there could have been no intention to make that the terminus of the road to be constructed. Accordingly the written statement, in defining the course of the centre line, declares that it extends "into Depot No. 1;" and the plan shows, not only that the lines of location, if extended at all, must pass into that tract of land, but that they were in fact so extended upon the plan; cutting off a corner of the land, for which the petitioner now claims damages. The case finds also that the road was actually constructed in 1853 over the location shown by this extension of the lines, and that it has been used since that time for the purposes of the railroad. It is apparently a necessary part of the track by which to reach the terminus of the road in that direction.

The real question in the case then is, whether land of a railroad corporation, thus appropriated and occupied by its structures for the exercise of its franchises, can be sold and transferred by the corporation without legislative authority. In this respect I cannot concede that it makes any difference whether the land was acquired by purchase or by the statute mode. The location is mainly necessary to define the limits over which the right of eminent domain is exercised and private property sequestered. It may be important in order to fix the extent of the appropriation to the public use, when private property is not taken. But to the extent of the actual occupation and physical adaptation to the public use it cannot be necessary; when the question arises between the public requiring the continuance of that appropriation, and the corporation seeking, by a sale, to discontinue it, or to pass the control of its franchises into other hands. *Whittenton Mills* v. *Upton*, 10 Gray, 582, 596. *Commonwealth* v. *Smith*, 10 Allen, 448, 456.

Against this public right, the mortgage of the railroad corporation was inoperative to transfer any part of the land essential to the exercise of its franchises, and actually appropriated and used therefor. The jury have found to what extent the land, purchased by this petitioner, had been previously so appropriated; and for so much of his land I can see no legal ground for any recovery against this respondent, succeeding, by legislative authority, to the corporation by which the road was made.