### ARGUED AND DETERMINED

#### IN THE

# SUPREME JUDICIAL COURT

#### OF

# MASSACHUSETTS.

---

OLD COLONY RAILROAD COMPANY *vs.* CHARLES MILLER.

Barnstable. January 23, 1877; January 22. — June 28, 1878.

If a railroad corporation takes by its location the exclusive use of a piece of land, leaving other land of the owner on each side of the railroad, he is entitled to damages, with interest from the date of the filing of the location; and the fact that, when the road is constructed, suitable provision is made for the owner to cross and recross the location from one part of his remaining land to the other, and for the drainage and flowage of the part of his land which is cut off, and that he accepts the same and uses it with the understanding between himself and the company that he has a right so to do, is inadmissible in reduction of the damages.

PETITION to the Superior Court, alleging that the petitioner was aggrieved by an award of the county commissioners, allowing $875 as damages caused by the location and construction of the petitioner's railroad over the land of the respondent in Falmouth; and praying for a jury to assess such damages. Trial before *Brigham*, C. J., who allowed a bill of exceptions in substance as follows:

The location of the railroad crossed the respondent's farm, cutting off between three and four acres of it, to which he had no access except by crossing the location. The railroad was constructed in the spring of 1872, and the petitioner then built a fence on each side of the location, put up bar-ways and put down

planks between the rails of the track, and there was no evidence that this did not afford the respondent a convenient means of crossing and recrossing the location between the portions of his farm thus separated. There was evidence tending to show that the respondent used this provision for crossing and recrossing, from the time it was so made continuously until the trial, as of right. The railroad location also crossed the respondent's cran- berry bog, leaving about three acres of it above the location, which, for purposes of cultivation, it was necessary should be flowed and drained from below the location, and which had no drainage or flowage except through the embankment.

At the time of the construction of the railroad, provision for such flowage and drainage was made by the petitioner by put- ting in a culvert on land immediately adjoining the petitioner's land, through the embankment, and cutting ditches along the upper side thereof, to conduct the water to such culvert.

There was also evidence tending to show that the respondent had used such provision, and had put in a dam across the upper end of the culvert on the location, to hold back the water, and thus flow the upper part of the bog, which dam was in use at the time of the trial; but, as to the sufficiency of this culvert for the purpose of draining the bog, the evidence was contradictory.

The petitioner requested the judge to instruct the jury that if they found that, when the petitioner constructed its road through the respondent's land, it made suitable provision for the respondent to cross and recross the location from one part of his farm to the other, or for the drainage and flowage of the upper portion of his cranberry bog, and he had accepted the same and used it, with the understanding between himself and the peti- tioner that he had a right so to do, they might consider that fact in estimating the damages caused by taking the respondent's land.

The judge declined to give this instruction; but instructed the jury that, no right of crossing the location, or of flowing or drain- ing the upper portion of the cranberry bog through the location, being shown to have been reserved, and thus assured to the re- spondent, his right of crossing the location and of flowing and draining the upper part of the bog had been taken away from him, and damages must be assessed for such deprivation, irre

spective of any temporary use by or advantage to the respondent from the culvert and crossing; and that the respondent was entitled to recover interest at the rate of six per cent. upon the damages found, from the time the petitioner entered upon the land by any act affecting the owner's use of it. This instruction in the matter of interest was excepted to by the petitioner as not covering a request for instructions by the petitioner, that the respondent's use of the culvert and crossing might be considered by the jury in reduction of interest and damages.

The jury assessed damages to the respondent in the sum of $3006.69; and the petitioner alleged exceptions, which were argued in January, 1877, and reargued in January, 1878.

*G. Marston & J. H. Benton, Jr.*, for the petitioner.

*T. M. Stetson*, for the respondent.

COLT, J. The right of the landowner to damages for land taken by a railroad corporation is complete when the location is made. That act constitutes the taking. It is the loss occasioned by the exercise of the right of eminent domain at that time, for which the statutes provide indemnity. The amount is then due, and, if agreed upon by the parties, must be then paid. If not agreed on, the damages are assessed by a jury on the application of either party; but they are assessed as of the time of the location, and the jury may properly allow interest upon the amount ascertained as damages, for the detention of the money from the time of the taking. The damages are to be assessed in the manner, and upon the same proceedings, as is provided for the recovery of damages in the laying out of highways. Gen. Sts. *c.* 63, §§ 21, 22.

In the case of *Parks* v. *Boston*, 15 Pick. 198, 208, the jury, in a highway case, were told that the plaintiff was entitled to recover the value of the land at the time when it was taken, with interest from that time, subject to reasonable deduction for benefits to him caused by the widening; and Chief Justice Shaw declared that " it is not, strictly speaking, an action for damages; but rather a valuation or appraisement of an incumbrance created on the plaintiff's estate, for the use of the public. It is the purchase of a public easement, the consideration for which is settled by such appraisement only because the parties are unable to agree upon it. The true rule would be, as in the case of other

purchases, that the price is due and ought to be paid, at the moment the purchase is made, when credit is not specially agreed on. And, if a pie-powder court could be called on the instant and on the spot, the true rule of justice for the public would be, to pay the compensation with one hand, whilst they apply the axe with the other; and this rule is departed from only because some time is necessary, by the forms of law, to conduct the inquiry; and this delay must be compensated by interest." See also *Reed* v. *Hanover Branch Railroad*, 105 Mass. 303, 305; *Ham* v. *Salem*, 100 Mass. 350; *Presbrey* v. *Old Colony & Newport Railway*, 103 Mass. 1, 5; *Edmands* v. *Boston*, 108 Mass. 535, 550; *First Baptist Society* v. *Fall River*, 119 Mass. 95. And this is the rule in other states and in England. *Bangor & Piscataquis Railroad* v. *McComb*, 60 Maine, 290. *Railroad* v. *Gesner*, 20 Penn. St. 240. *Delaware, Lackawanna & Western Railroad* v. *Burson*, 61 Penn. St. 369. *Rhys* v. *Dare Valley Railway*, L. R. 19 Eq. 93.

The instruction in the case at bar, that the landowner was entitled to interest upon the damages found, from the time the company entered upon the land by any act affecting the owner's use of it, was sufficiently favorable to the railroad corporation, if indeed there was any exception to that part of the instruction.

The other question raised relates to the refusal of the court to instruct the jury that they were bound to take into consideration certain benefits which the landowner had enjoyed in the use of the land by him since the location was filed.

It appeared that the railroad crossed the respondent's cranberry bog upon an embankment through which an opening was made for drainage. The company built a culvert on adjoining land, and dug ditches to it by the side of the embankment, in order to provide for such drainage. They also built bar-ways and laid planks for a crossing. There was evidence that the respondent used these provisions for crossing and for drainage. The railroad corporation contended that the jury should be required to take into consideration, in reduction of damages and interest, this use by the respondent. But the judge properly declined so to instruct them.

No right of crossing or of drainage was reserved in the original location filed by the company, or ordered by the county commis-

sioners under the provisions of the Gen. Sts. *c.* 63, § 40. The right to the exclusive use of the land taken was acquired by the location. The title to such exclusive use was then vested in the company; the value of such title was the measure of the landowner's damages; and the money to be paid for it was due then, though the amount could not then be ascertained. The fact that the respondent had used these privileges cannot be availed of to diminish his claim for damages, or to change the rule which allows him interest for the detention of the money. Such use was merely permissive and subject to the paramount right of the railroad corporation. Interest is given as a lawful incident of the purchase money from the time it is first due, namely, the date of the taking, and as declared by Strong, J., in *Philadelphia* v. *Dyer*, 41 Penn. St. 463, 470, " Delay of payment is not the less an injury, because the landowner may continue the occupation of the land."

It is unnecessary to decide what might be the effect of an express agreement between the parties, that such benefits received should go in reduction of damages. The case does not disclose any evidence of any such agreement, or of any understanding that the landowner had a right to such benefits. The subsequent dealings of the parties in the use of this land or in other respects, where there has been no release or settlement, cannot affect the vested right. In *White* v. *Boston & Providence Railroad*, 6 Cush. 420, the landowner was not permitted to show that the way legally reserved to him had not been made for his use. In *Brown* v. *Worcester*, 13 Gray, 31, the defendant was not permitted to avail itself of a permission given to the plaintiff to keep his house on the location until he had occasion to rebuild or remove it. In *Dickenson* v. *Fitchburg*, 13 Gray, 546, evidence that land taken for a highway had since been laid out as a sidewalk was held inadmissible in reduction of the owner's damages. See also *Cobb* v. *Boston*, 109 Mass. 438, and 112 Mass. 181; *Burt* v. *Merchants' Ins. Co.* 115 Mass. 1.

If either party has suffered injury or acquired rights in such subsequent dealings, the remedy for such injury or the enforcement of those rights must be had in some other form of proceeding. To hold otherwise would be to allow the railroad corporation to establish a set-off in a case where it could not be prop-

erly pleaded or tried, and to raise new issues to the embarrassment of a trial where the only question is as to damages for the land taken and for the detention of the money.

Besides, if benefits subsequently received were allowed to diminish the damages to be awarded, the question submitted to the jury would be different from that which is previously passed upon by the county commissioners ; and the landowner might be unjustly subjected to costs for failing to recover a greater amount than was previously awarded and tendered. Such could not have been the intention of our statute which gives to the trial before the jury the nature of an appeal from the county commissioners, and subjects the petitioner to costs if he fails to recover as much as was previously awarded. Gen. Sts. *c.* 63, §§ 21, 22, 35.

The case of *Pinkerton* v. *Boston & Albany Railroad*, 109 Mass. 527, 536, is cited by the petitioner as opposed to these results. But we do not understand it to have been decided in that case that a release even of part of the land, if tendered to the landowner and not accepted, could be considered in reduction of damages. The point decided was, that a conditional abandonment of location, not accepted, would be no bar to a petition for an assessment of damages. This was a full answer to the point made by the respondent, although it was said in addition that the rights of the respondent were sufficiently protected by the ruling that this attempt to abandon was proper for the consideration of the jury in mitigation of damages. To this ruling in the respondent's favor no exception was taken, and no decision upon it was called for. It would seem that subsequent changes in the relations of the parties, at least short of an unqualified abandonment of a location which has never been entered upon, or of a release or settlement of the claim, cannot be availed of to bar the proceedings, or to increase or diminish the damages to be awarded.

A majority of the court is of opinion that in the case at bar the entry must be                                    *Exceptions overruled.*