

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable J. W. Strawn
County Attorney
Willacy County
Raymondville, Texas

Dear Sir:

Opinion No. 0-2698
Re: Whether a two year suspended
sentence for burglary disqualifies
a person from holding the office
of Justice of the peace.

Your letter of November 7, 1940, recites that a
person in your county, under a two year suspended sentence
for burglary, was elected to the office of justice of the
peace, the two year term being still in effect at this time,
and, of course, at the time of his election. We assume that
the two year term will also be in effect when the subject
individual will seek to qualify for the office to which he
has been elected. You request a legal opinion from this De-
partment as to whether this individual is qualified to hold
the office of justice of the peace.

Section 2 of Article XVI of the Constitution of
Texas provides as follows:

"Laws shall be made to exclude from office, serv-
ing on juries, and from the right of suffrage, those
who may have been or shall hereafter be convicted of
robbery, perjury, forgery, or other high crimes. . . ."

Honorable J. W. Strawn, Page 2

Article 2937, Revised Civil Statutes of Texas, reads in part:

"No person shall be eligible to any state, county, precinct, or municipal office in this State, unless he shall be eligible to hold office under the Constitution of this State. . . ."

There would seem to be no doubt that the expression "other high crimes" would include the crime of burglary. Certainly any crime of the same grade as the enumerated ones, namely, felonies, is comprehended by this provision of the Constitution. In Ross v. Crofutt, 80 Atl. 90; 84 Conn. 374, it was held that the words "high crime" were intended to be synonymous with the word "crime" as used in the Federal Constitution, and were sufficient to include a conspiracy, whether it was a felony or a misdemeanor. This question has not been passed on by the courts of Texas, but we have no hesitancy in holding that one who has been convicted of the crime of burglary is diqualified by the Constitution of Texas from holding public office.

A more perplexing question arises in the use of the term "convicted", as to whether such term would include the situation growing out of the suspended sentence law of Texas.

Article 778 of the Code of Criminal Procedure of Texas provides that where a suspended sentence has been granted "neither the verdict of conviction nor the judgment entered thereon shall become final." Moreover, it has been held that where the accused receives a suspended sentence, the judgment is not final and cannot be appealed from. Jones v. State, 281 S. W. 1072; Bierman v. State, 164 S. W. 840; Hill v. State, 243 S. W. 982.

However, in construing the words "convicted of a felony" in the Suspended Sentence Law, the Court of Criminal Appeals of Texas in Hill v. State, supra, declared:

"It seems clear . . . that by the use of the words 'convicted of a felony' in Sections 1, 2, 3, and 5 of the statute under discussion (the Suspended Sentence Law, Article 865b-1, Code of Criminal Procedure) was meant that status resulting from a judgment based on

432

> the verdict of a jury finding the accused guilty
> of some felony. The term 'conviction' is used
> in many of our statutes in much the same sense.
> . . . Our conclusion from the above statement that
> one 'convicted of a felony' whose sentence is sus-
> pended is within the comprehension of this statute,
> when it used the expression 'convicted of a felony'."

The question, manifestly, is whether the use of the word "convicted" in Section 2 of Article 16 of the Constitution means a verdict of guilty or a _final_ conviction.

The latter construction has been given the use of this word in the statute (since amended) which made a person who had been convicted of a felony incompetent as a witness. See Espinosa v. State, 165 S. W. 208; Simonds v. State, 175 S. W. 1064; Coleman v. State, 187 S. W. 481; Arcia v. State, 9 S. W. 685.

Whereas, in Goss v. State, 298 S. W. 585, it was said:

> "The Constitution has vested in the Governor the
> power to commute the punishment 'after conviction'.
> See Constitution of Texas, Article IV, para. 11.
> While in some sense, the term 'conviction' applies to
> a final judgment of guilty, that term, as used in our
> Constitution means a _verdict_ of 'guilty', and a pardon
> granted pending appeal is valid. . . ." (Underscoring
> italics)

To the same effect is Duke v. State, 291 S. W. 539, wherein it was said:

> "Concerning the meaning of the term 'conviction',
> much is to be found in the law books. According to
> the weight of the precedents, it seems, in its relation
> to the power to pardon, that the term 'conviction' refers
> to the verdict of 'guilty' by a jury and is not restricted
> to a final judgment on such verdict."

An exhaustive discussion of the meaning of the word "conviction", as used in the Massachusetts Constitution, is found in the case of Commonwealth v. Lockwood, 109 Mass. 333, 12 Am. Rep. 699. After a review of the authorities in England, Massachusetts, and elsewhere, the court concluded:

Honorable James W. Strawn, Page 4

"The ordinary legal meaning of 'conviction' when used to designate a particular stage of a criminal prosecution triable by jury, is the confession of the accused in open court, or the verdict returned against him by the jury, which ascertains and publishes the fact of his guilt; while 'judgment' or 'sentence' is the appropriate word to denote the action of the court, before which trial is had, declaring the consequences to the convict of the fact thus ascertained."

See also the cases of State v. Garrett, 188 S. W. 58, 135 Tenn. 617; Parker v. State, 103 Tenn. 547, 63 S. W. 1092; State v. Alexander, 76 N. C. 231, 22 Am. Rep. 675; People v. Marsh, 125 Mich. 410, 84 N. W. 472, 51 L. R. A. 461; Gilmore v. State, 3 Okla. Crim. 639, 108 Pac. 416.

Neither of the foregoing cases related to the particular, or a like, constitutional provision pertaining to qualification for office as found in Section 2 of Article XVI of the Texas Constitution.

It is noted that Section 2 of Article XVI disqualifies upon the same basis a person from enjoying the right of suffrage. In the case of Aldridge v. Hamlin, 184 S. W. 602, it was contended that a voter was disqualified who had been convicted of a felony and given a suspended sentence. The court held that the person was not a qualified voter because the Suspended Sentence Law under which he received his suspension of sentence was unconstitutional. We do not believe that a necessary inference from the case is that the voter would have been qualified, notwithstanding his conviction of a felony, if the suspension of his sentence had been under a constitutional Suspended Sentence Law. It is more reasonable to believe that the court only needed to consider the question apart from the suspension of sentence in view of the prior holdings of the Texas courts that the then in existence Suspended Sentence Law was unconstitutional. It was not necessary for the court to pass upon the question of the qualifications of a person to vote who was under a suspended sentence arising out of a constitutional suspended sentence law.

In Snodgrass v. State, 150 S. W. 162, the Court of Criminal Appeals held the Suspended Sentence Law enacted by the 32nd Legislature unconstitutional as "clearly in contra-

Honorable James W. Strawn, Page 5

vention of the provision granting to the Governor alone the power and authority to remit the punishment for crime when a person has been legally adjudged guilty, and his punishment assessed, and also Section 2 of Article 16, wherein it is provided that men adjudged guilty of certain offenses shall forfeit certain rights and privileges."

In Baker, v. State, 158 S. W. 998, the same court upheld the constitutionality of Senate Bill No. 5 passed by the 33rd Legislature upon the following proposition:

"The passage of this law, misnamed a 'suspension of sentence' is a legislative Act, passed within the scope of the power which they and they alone possess, to fix by law the punishment of any and all penal offenses. It does not authorize a jury nor the courts to suspend any law of this State, but the Legislature by law has provided that in given contingencies no punishment shall be suffered for the first violation of certain provisions of the Penal Code."

The theory of the court in upholding the present Suspended Sentence Law was, briefly, that the Legislature had merely constituted a suspended sentence, in certain contingencies, the punishment for a violation of certain provisions of the Penal Code. As said in Parrish v. State, 71 S. W. (2d) 274, 276: "While the Suspended Sentence Law is purely a penalty statute. . . ."

Adverting to the Snodgrass case, wherein the old Suspended Sentence Law was held unconstitutional, it is highly significant that the effort to uphold this law as constitutional, because not in contravention of the provision of the Constitution granting to the Governor alone the power and authority to remit punishment for crime, was grounded upon the proposition that the recipient of a suspended sentence had not been "convicted", had suffered no disability, forfeited no civil rights, and consequently the effect of the law was not to clothe a person or agency, other than the Governor, with power and authority to remit the punishment for crime. In repudiating this contention the court held that the word "conviction" appearing in Section 11 of Article IV of the Constitution means the verdict of guilty pronounced by a jury, the term not embracing the sentence or a final judgment as contradistinguished therefrom. Moreover,

Honorable James W. Strawn, Page 6

the court pointed out "and no one would question, if under this Act, a person had been tried and convicted, his sentence suspended, if it should be attempted to try him again for the same offense, a plea of autrefois conviction would be sustained by any court in the land, for it would be evident that he had been tried and convicted of the same offense."

And in Coon v. State, 263 S. W. 914, it was declared:

"Was the judgment granting appellant the benefit of the 'Suspended Sentence Law' upon conviction under the first indictment such a judgment as would support a plea of former conviction? We are not unmindful of the rule that a conviction to be available in bar of another prosecution for the same offense must be a 'final conviction' (citation of cases) . . . in the sense that no appeal is pending therefrom, but no appeal is allowed where a sentence is suspended at a defendant's request. . . . It is true the conviction is not final in the sense that the state can enforce punishment by confinement in the penitentiary, but it is final in that the State is not permitted to take any further action in the matter except upon a subsequent conviction for another felony. . . . The application of the law which prevents a subsequent prosecution for the same offense where there has been a former conviction necessarily leads to construing a conviction with a suspended sentence as 'final' in the sense that it will support a plea of former conviction."

Relating specifically to Section 2 of Article XVI of the Constitution, the court further held in the Snodgrass case, supra:

"But there is another section of our Constitution appellant seems to have wholly overlooked. Section 2 of Article 16 commands the Legislature to enact certain laws in the following language: 'Laws shall be made to exclude from office, serving on juries, and from the right of suffrage, those who may have been or may hereafter be, convicted of robbery, perjury, forgery, or other high crimes.' The Legislature in obedience to

Honorable James W. Strawn, Page 7

this command, has passed laws in accordance with
its provisions, but this Act of the Legislature,
although a person had been adjudged guilty of forgery,
or bribery, if appellant's construction is correct,
and they suffer no disability by reason of such con-
viction, would be in direct conflict with this provi-
sion of the Constitution and would therefore be void."

What does the court mean by this language? Clearly
that if the Suspended Sentence Law defeats or nullifies or con-
flicts with Section 2 of Article XVI of the Constitution, it
would be void. This conflict, according to the court, would
result if a person who is the recipient of a suspended sentence
would not suffer the disability pronounced by this provision
of the Constitution. In other words, as applied to Section 2
of Article 16 of the Constitution, if because of and under the
suspended sentence law a person could hold office, serve on
juries, and vote, notwithstanding his having been adjudged
guilty of the crimes mentioned, because his sentence had been
suspended, would not the effect of the suspended sentence law
be to defeat the purpose of the Constitution? Whereas, if
the word "convicted" in Section 2 of Article 16 of the Con-
stitution be held to mean the ascertainment and publication
of guilt, rather than a final conviction, the disabilities
pronounced by the Constitution would be suffered and the
spirit and purpose of Section 2 of Article 16 is not violated
by the suspended sentence law.

It is noteworthy that the court in the Baker case,
upholding the present suspended sentence law, did not advert
to Section 2 of Article 16 of the Constitution, although
Judge Harper was the author of the opinion and also of the
opinion in the Snodgrass case, wherein he condemned the old
law as violative of Section 2 of Article 16.

The significance of this lies in the reasoning adopt-
ed by Judge Harper in the Baker case, namely, that the new
law did not authorize a "suspension of sentence" but provided
for a different or no punishment for a first violation. This
reasoning, it is believed, presupposes a "conviction" for the
offense charged for the obvious reason that no matter if
punishment be light, as a suspended sentence, or greater, as
a penitentiary sentence, nonetheless there must be a convic-
tion, else the punishment suffered would be violative of
fundamental law.

The foregoing discussion demonstrates, of course,
that the question before us is not free from doubt, and is

Honorable James W. Strawn, Page 8

an open one in Texas.  We are constrained to the opinion however, that it comports with the logic employed in the cases we have reviewed, particularly those treating of the constitutionality of the suspended sentence laws, and with the spirit and purpose of the Constitution, to rule that the word "convicted" in Section 2 of Article 16 of the Constitution means and embraces the status resulting from the application of the suspended sentence law of Texas to a verdict ascertaining and publishing the guilt of a person charged with a criminal offense.

It follows, under our holding that the offense of burglary is a "high crime" within the purview of Section 2 of Article 16 of the Constitution of Texas, that it is the opinion of this Department that a person who has been convicted of burglary and assessed a two year suspended sentence which is still in force and effect is not eligible to the office of Justice of the Peace under the Constitution and statutes of Texas.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Zollie C. Steakley
Assistant

ZCS:BBB

APPROVED NOV 22, 1940

ATTORNEY GENERAL OF TEXAS