OTIS DRURY, administrator, *vs.* MIDLAND RAILROAD
COMPANY & others.

Norfolk.   Jan. 21. — Oct. 27, 1879.   AMES & SOULE, JJ., absent.

By the law of this Commonwealth, a person, whose land is taken by a railroad corporation under the right of eminent domain, has a right to compensation, which, if not strictly a lien, is at least in the nature of a lien or incumbrance upon the land; and this right may be enforced against a corporation which is the successor of the corporation taking the land.

A railroad corporation took a parcel of land under the right of eminent domain. Subsequently it mortgaged its property to trustees to secure bonds to a certain amount, which stated that "the mortgage was the first and only lien on the property and franchises of the company, when the existing mortgage debt is retired."   The making of this mortgage was ratified by the Legislature.   The mortgage was afterwards foreclosed, and the bondholders formed a new corporation; and their acts in so doing were confirmed by the Legislature, and the new corporation was vested with all the franchises, powers and privileges of the old corporation, and made subject to all the restrictions, duties and liabilities, set forth in the general law relating to railroad corporations, then or there

after in force. *Held*, that the new corporation might properly be made a party respondent to a petition for damages, originally filed by the person whose land had been taken against the old corporation, and might be restrained from using or occupying the land, unless the damages were paid or secured to the land-owner.

On the issue whether land taken by a railroad corporation was in the county of Norfolk or in the county of Suffolk, ancient deeds, maps, plans and perambulations were put in evidence, and there was conflicting evidence as to the location of an ancient creek flowing through flats, which one party contended was the boundary line between the two counties. It was agreed that the question might be determined by the judge presiding at the trial, without submitting any question of fact to the jury. The judge ruled that the land was in Norfolk County. *Held*, on exceptions to his ruling, that it did not appear that the ruling was not based on facts not reported, and therefore not the subject of exception.

Before the St. of 1869, *c*. 349, (which annexed a portion of Norfolk County to Suffolk County, and provided that the courts in Norfolk County should retain jurisdiction of all actions, proceedings and matters rightfully commenced therein prior to that time,) took effect, land in Norfolk County was taken by a railroad corporation by the right of eminent domain, and the owner filed a petition to the county commissioners of Norfolk to have his damages for such taking assessed. After the St. of 1869 took effect, the commissioners made their award, and the petitioner filed a petition to the Superior Court in Norfolk for a jury, under the St. of 1873, *c*. 261. *Held*, that that court had jurisdiction.

If a person, whose land has been taken by a railroad corporation under the right of eminent domain, subsequently conveys a portion of the land by a deed containing covenants of warranty, his grantee is not a necessary party to a petition for the assessment of his damages for such taking; and the Gen. Sts. *c*. 43, § 53, do not apply.

A railroad corporation filed a plan entitled "location" of its road, on a scale of 2000 feet to the inch. Annexed to the plan, when filed, was a paper containing a table of curves, courses and distances of the railroad, and also a paper containing the boundaries of the railroad. On a petition for damages for land alleged to have been taken under this location, there was evidence that it was difficult to apply the plan with the accompanying descriptions to the land of the petitioner; but it appeared that, before the location was filed, the line of the railroad over the petitioner's land was surveyed and pointed out to him, and that the road was afterwards built in substantial conformity to the line pointed out. *Held*, that a ruling, that, the corporation having taken the land under the location and built their road, the location must be treated as valid and sufficient as against the corporation, was correct.

Ancient deeds and plans are admissible in evidence to prove the location of a creek or arm of the sea, filled up since the deeds were executed and the plans made.

A petition for damages for land taken by a railroad corporation under the right of eminent domain described a parcel of land part of which had been taken, leaving land of the petitioner on each side of the location, and prayed for damages for the land taken and for the injury to the remaining land, and for consequential damages for the injury done to the land on one side of the land taken. *Held*, that the petitioner was not precluded from claiming consequential damages for the injury to the land on the other side of the location.

If a railroad corporation takes a part of a lot of land under the right of eminent domain, the owner, for the purpose of showing the injury to the remaining

part, may prove the uses to which it might profitably be applied before and after the taking; but evidence that eleven years after the taking a person was ready to purchase the land is inadmissible in defence, although the petitioner contended that the remaining part was worthless after the taking.

If a railroad corporation takes a part of a lot of flats, under the right of eminent domain, and, on the issue of the damage done to the remaining part, the corporation puts in evidence as to the feasibility of putting in side tracks for the purpose of filling the flats, the owner may put in evidence that filling the land would require the erection of expensive retaining walls.

If a railroad corportion takes by the right of eminent domain a part of a lot of flats, and thereby cuts off access from tide-water to the remaining portion, the value of such access is an element proper to be considered by the jury in esti mating the injury to the landowner.

If a railroad corporation takes by its location the exclusive use of a parcel of flats, and thereby injures the remaining flats of the owner, the jury, in estimating the damages sustained by such owner, should not take into consideration the possibility that the corporation might be willing to allow spur tracks to be built on the remaining flats for the purpose of filling the same, or for purposes of business.

If a railroad corporation by its location takes land, interest is to be allowed from the time of the taking; and the fact that there has been a delay for many years in bringing a petition for damages, seasonably filed, to a hearing, is immaterial.

COLT, J. A petition to the county commissioners of Norfolk was presented by Cyrus Alger in 1854, to recover damages for land and flats taken by the location of the Midland Railroad Company in 1851. The proceedings upon this petition were continued by the commissioners until 1873, when the sum of $23,233 was awarded by them as damages against the railroad; and the corporation was ordered to give security for the payment of that sum, or for such damage as might be awarded by a jury. In 1875, the administrator of Alger's estate, being dissatisfied with the amount awarded, filed a petition to the Superior Court sitting in Norfolk County for a jury to assess his damages; and the case comes before us on exceptions taken by the respondents at the trial in that court.

1. Since the filing of the original petition, many changes have taken place in the ownership of the Midland Railroad Company. Its franchises, rights and property, subject to all its liabilities and obligations, passed by mesne conveyances through several different corporate organizations, to the Boston, Hartford and Erie Railroad Company, and were mortgaged by the latter in 1866 to Berdell and others, trustees. On the foreclosure of the Berdell mortgage in May 1871, they were transferred to the

New York and New England Railroad Company, the present owner. See *Ellis* v. *Boston, Hartford & Erie Railroad*, 107 Mass. 1, 18.

At the trial, the last-named corporation, and the trustees of the Berdell mortgage, who were made respondents, appeared and resisted the petitioner's claim. They objected that the present owners of the railroad were not in any manner liable to pay the damages which might be recovered; and that the payment of the same could not be enforced legally against them, or against the railroad in their possession. The judge declined so to rule; and instructed the jury, that the respondents succeeded to the rights of the Midland Railroad Company, and took the railroad subject to this claim for damages.

The Midland Railroad Company, by its charter, was made subject to all the duties, liabilities and restrictions set forth in the Revised Statutes, and to all general laws which had been or might be passed relative to railroad corporations. St. 1850, c. 268. At the time of the taking of this land, railroad corporations were required to pay all damages occasioned by the taking, to be estimated by the county commissioners in the manner provided for the laying out of highways, and subject to a right of appeal to a jury. The corporation was required, if requested by the landowner, to give security to the satisfaction of the commissioners for the payment of the damages awarded, and the right to enter upon and use the land, except for surveys, was suspended until such security should be given. Rev. Sts. c. 39, §§ 56, 61. These provisions were reënacted in the General Statutes, with the further provision, that the commissioners may issue warrants of distress to compel the payment of damages awarded; that the right to enter upon the land shall be suspended if the corporation, after such warrant, or after an execution has issued, neglects to satisfy the same; and that this court shall have power to restrain the corporation from so entering. Gen. Sts. c. 63, §§ 33, 34. The same provisions are also incorporated into the St. of 1874, c. 372, which is entitled "An act to revise and consolidate all the provisions relating to railroads," and in the third section of which it is further declared that, when a railroad laid out and constructed by one corporation is lawfully maintained and operated by another, the latter shall

be subject to the duties, liabilities, restrictions and other provis-
ions, respecting the maintenance and operation of the road, in
the same manner as if it had been laid out and constructed by
the latter corporation.

By the St. of 1873, *c.* 289, the proceedings of the holders of
the bonds secured by the mortgage to Berdell and others, in
forming a corporation under the name of the New York and
New England Railroad Company, were ratified and confirmed,
and the New York and New England Railroad Company was
made a corporation, and was vested with all the franchises, pow-
ers and privileges, and made subject to all the restrictions, duties
and liabilities, set forth in the general laws, which then were, or
might thereafter be, in force relating to railroad corporations.*

---

* The provisions of the mortgage to Berdell and others as trustees are
set forth in 107 Mass. 3, note, with the exception of some of the recitals,
the form of the bonds, and the description of the property conveyed. Among
the recitals there omitted, and relied on by the respondents in this case, is
one of a vote of the stockholders, that the directors be authorized to make
application to the legislatures of the states in which the corporation had
chartered rights, "for authority to make a mortgage upon the whole or any
portion of the line of the road, and to issue mortgage bonds to the amount
of $20,000,000, for the purpose of providing for and retiring all the exist-
ing mortgage debt and prior liens upon the line of the road." In the form
of the bond given in the mortgage was a clause that the bonds were secured
by the mortgage, "which is to be the first and only lien on the property
and franchises of the company, when the existing mortgage debt is retired."
In the description of the property conveyed, the lands at the termini of the
road, at Boston and Fishkill, outside of the location of the road, are ex-
pressly excepted from the conveyance. The St. of 1866, *c.* 142, declares
that the proceedings of the Boston, Hartford and Erie Railroad Company,
whereby they conveyed their railroad and other property to Berdell and
others, "trustees of the bondholders in said mortgage mentioned, to secure
the holders of said bonds the payment of the same, are hereby ratified and
confirmed."

The respondents contended that the object of the mortgage was to create
a security which should take precedence of everything except mortgages
then existing; and that the New York and New England Railroad Company
was not a successor of the mortgagor in any other sense than as a creditor
foreclosing his mortgage is a successor of his debtor, especially as all the
property of the Boston, Hartford and Erie Railroad Company was not in-
cluded in the mortgage; and that the execution and ratification of the mort-
gage created a vested right which could not be taken away by subsequent
legislation

It is plain from these statutory provisions, that the Legislature intended to give to the landowner, as an important means for securing the payment of his damages, the power to prevent the occupation and use of his land, unless payment was made or was amply secured by the corporation, and there is nothing which supports the claim .that the owner is deprived of that security by the conveyance of the estate taken to another corporation. It is essential to the valid exercise of the right to take private property for public use, that the act authorizing it should provide adequate compensation to the owner. The power to take and the obligation to indemnify for the taking are inseparable. They are parts of one transaction. *Haverhill Bridge* v. *County Commissioners*, 103 Mass. 120. *Connecticut River Railroad* v. *County Commissioners*, *ante*, 50. It would require clear language to lead us to the conclusion that the Legislature intended, in any of its dealings with this corporation, to impair the security of the landowner. The provisions in his favor as to the right to occupy and use the land are applicable equally to the Midland Railroad Company and to the successors and assigns of that corporation. The latter take only what the former had a right to convey; they take subject to this claim for damages, with the right of the owner to enforce it in the manner pointed out by the laws then existing, or by subsequent statutes so far as those statutes give remedies for existing rights. They succeed only to the conditional right of occupation and use which the Midland Railroad Company had when it parted with its title. The right of the petitioner, if not strictly a lien, has at least the nature of a lien or incumbrance upon the land. See *Boston & Providence Railroad* v. *Midland Railroad*, 1 Gray, 340, 359; *New Bedford Railroad* v. *Old Colony Railroad*, 120 Mass. 397.

It is not necessary now to determine whether the petitioner is entitled, against the present respondents, to the other remedies provided by the statutes, or whether the respondents are liable upon a warrant of distress or an execution for the damages recovered. It is sufficient that he has the remedy above pointed out. There has been as yet no application for any other.

2. Two questions affecting the jurisdiction of the county commissioners of Norfolk County, and of the Superior Court

sitting in that county, over these proceedings, are presented by the exceptions. The respondents contend, that no part of the land taken was in the county of Norfolk. It is only where land owned by one person lies contiguously in different counties, that the commissioners of either county have jurisdiction. Gen. Sts. c. 63, § 23. Much evidence as to the location of the county line was introduced; ancient deeds, maps, plans and perambulations were relied on. It became necessary to ascertain the location of an ancient natural creek flowing through the flats, which was relied on by the respondents as fixing the true county line. It is plain from this bill of exceptions, that the true location of the line depended largely upon matters of fact; and it was agreed by the respondents, that the question might be determined by the court, without submitting any question of fact to the jury. The judge ruled that the land in question was in Norfolk County at the time it was taken. It does not appear that this ruling was founded on the construction of any written instrument, or any act of the Legislature. It may have depended on facts found by the judge, which are not reported. It cannot be said that the evidence was not sufficient in law to justify the finding; and this is the only question of law on this point.

3. It is also contended, that, even if a portion of the land was in Norfolk when taken, and the commissioners of that county had jurisdiction of the original petition, yet as the land was annexed to and became part of Suffolk County by the St. of 1869, c. 349, making the town of Dorchester part of the city of Boston, the petition for a jury in 1875 should have been presented in that county. Section 3 of this act, after giving to the courts of Suffolk jurisdiction over causes of action and proceedings in civil causes, and over all matters in probate and insolvency, which have accrued in the territory annexed, reserves to the several courts in Norfolk "jurisdiction of all actions, proceedings and matters, that shall have been rightfully commenced in said courts prior to the time when this act shall take effect;" and provides that "all suits, actions, proceedings, complaints and prosecutions, and all matters of probate and insolvency, which shall be pending within said territory, before any court or justice of the peace, when this act shall take effect, shall be heard and determined as though this act had not passed."

When the act took effect, the original petition was pending before the county commissioners of Norfolk. The petitioner had the right, if dissatisfied with the award of damages, to apply to the same board of commissioners for a jury. The application for a jury is in the nature of an appeal, constituting with the original petition but one proceeding, conducted for the sole purpose of ascertaining the amount of damages to which the landowner is entitled. It is a pending civil proceeding within the meaning of the act. By the St. of 1873, c. 261, the petitioner, instead of applying to the commissioners for a sheriff's jury, was allowed the alternative of applying to the Superior Court for a trial at the bar of that court; but in either form it is only in the nature of an appeal in a pending proceeding. *Stone* v. *Charlestown*, 114 Mass. 214. *Miller* v. *County Commissioners*, 119 Mass. 485. *Fitchburg Railroad* v. *Boston & Maine Railroad*, 3 Cush. 58, 77.

4. The facts stated do not show that there were other parties having interests in the premises, who ought to have been joined as necessary parties to the proceedings.

After the location was made by the Midland Railroad Company in 1851, Alger by deed of warranty conveyed two lots, being part of the premises taken, to different grantees. It is contended that these grantees took the right to damages which Alger had in these lots, and that they should have been cited in under the Gen. Sts. c. 43, § 53. But the answer to this is that the title acquired by the railroad was acquired when the location was filed. Alger was then sole owner in fee of all the land described in his petition. He alone was the proper party to commence proceedings. *Boynton* v. *Peterborough & Shirley Railroad*, 4 Cush. 467. The section relied on has reference to parties having several estates in the land at the time when it is taken, as in the case of tenants in common. *Dwight* v. *County Commissioners*, 7 Cush. 533. When there is only an equitable interest at the time of the taking, such as is created by a bond for a deed, it was decided, in *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad*, 10 Cush. 385, that the railroad company could not object that the owner of that interest had joined with the legal owner in the petition, not that the owner of an equitable interest was ever a necessary party.

It is contended, that the subsequent conveyances of Alger with covenants of warranty operated as equitable assignments of his claim for damages, on account of the land conveyed; but, whether this is so or not, it is plain that these conveyances could not deprive him of the right to prosecute his claim for damages, and to recover the same in his own name, if he saw fit. The remedy of the grantees is at law upon Alger's covenants of warranty. If the suggestion that the administrator, upon receiving the damages demanded, can be equitably charged as trustee for the grantees and their assigns for such part of the damages as justly belongs to the lots conveyed, is well founded, the right to recover full damages in this proceeding is not there by impaired. The case proceeds wholly for damages sustained by the location of 1851, and is not affected by any subsequent location amending or confirming the same, not produced at the trial. The rulings and instructions asked upon this point were properly refused, and the jury were properly instructed, that, the conveyances having been made after the filing of the location in 1851, their finding must be for the whole damages to all the land owned by Alger at that time.

5. The respondents further objected, that the alleged location in 1851 was invalid and insufficient to support an application for land damages. It was ruled that the burden of proof was on the petitioner to prove a valid and legal location; and it was further ruled, that, the company having taken the land, under the location then filed, and built their road, it must be treated as valid and sufficient for the purposes of this hearing, and as against these respondents. These rulings were correct.

It was found as a fact at the trial, that a plan was filed in the clerk's office on May 2, 1851, upon which was an indorsement signed by the directors of the Midland Railroad Company, in the following words: "Location of the Midland Railroad in the county of Norfolk, scale 2000 to an inch, April 1851. This is the plan referred to, and filed with and as part of the location of so much of the Midland Railroad as lies in the county of Norfolk, this day filed, Boston, May 1, 1851." Annexed to this when filed was a paper entitled "Table of curves, courses and distances of the Midland Railroad location in the county of Norfolk, the

width of location being two and one half rods on each side of the described line;" and also a paper entitled "Table of boundaries of Midland Railroad in Norfolk County."

There was some evidence tending to show, that, by reason of the small scale upon which the plan was drawn, it was difficult to apply it with the accompanying descriptions to the land and flats of the petitioner; but there was evidence that the line over these flats was surveyed and the location pointed out to the petitioner before the filing of this petition, and that the location so pointed out was substantially the actual location of the road as afterward constructed. The new or amended location of 1854, referred to in the original petition, was not produced at the trial by either party. And there was no evidence that the land actually taken and described in the petition was not substantially covered by the description contained in the location of 1851. The three papers relied on to prove the location, although somewhat informal and irregular, were joined together when filed, and are to be construed together as one. Both parties have treated the location as sufficient; and mere uncertainty or ambiguity of description is cured by the possession actually taken by the corporation and acquiesced in by the petitioner. See *Wilson* v. *Lynn*, 119 Mass. 174, 178, and cases there cited; *Kohlhepp* v. *West Roxbury*, 120 Mass. 596, 599; *Pinkerton* v. *Boston & Albany Railroad*, 109 Mass. 527, 539, 540.

It is the duty of a railroad corporation to file the location of its road, within one year, with the commissioners of each county through which the same passes, "defining the courses, distances and boundaries of such portion thereof as lies in each county." Gen. Sts. c. 63, § 18. And it was said by Shaw, C. J., that "if, without a location, the corporation should enter upon land, and proceed to make its road, in favor of the owner and against the corporation, this might be deemed such actual taking as would warrant him to proceed and claim damages; or rather, that the corporation under such circumstances would be estopped to deny that they had taken the land." *Boston & Providence Railroad* v. *Midland Railroad*, 1 Gray, 340, 361. *Davidson* v. *Boston & Maine Railroad*, 3 Cush. 91, 106.

We are of opinion that this location is to be treated as good, upon this petition, and as against these respondents.

6. The petitioner was properly allowed to put in evidence the plan of Hannah Everett's land made by Mathew Withington in 1816, and the plan of the Blake estate made in 1805. The evidence was at least competent as tending to show the position of the creek before referred to; the channel of which, it is inferred, had been filled up by the recent occupation and improvement of the flats. This creek, from which the tide did not wholly ebb, was a natural boundary, like an arm of the sea, which, while it existed, was notorious and public in its nature. It governed the claims of all adjacent proprietors of flats, and in that respect was a common boundary to many interested persons. *Attorney General* v. *Boston Wharf Co.* 12 Gray, 553. In one view taken at the trial, the thread of this creek was the dividing line between the two counties. Its location may be proved by reputation and tradition, recitals in ancient deeds, and the evidence afforded by ancient maps and plans. 1 Greenl. Ev. §§ 139, 145. *Morris* v. *Callanan*, 105 Mass. 129. *Sparhawk* v. *Bullard*, 1 Met. 95.

The Withington plan covering the line in dispute seems to have been admissible also in rebuttal, when accompanied by evidence that it came from the custody of those under whom the respondents claim to derive title. *Chapman* v. *Edmands*, 3 Allen, 512.

7. The respondents objected to the admission of evidence to show consequential damages to so much of the petitioner's land as lies west of the railroad, on the ground that the claim for incidental damages to the remaining land of the petitioner was limited, in the original petition to the county commissioners, to such portion of his land or flats "as lies southerly or eastwardly of the contemplated track." But the boundaries given in the original petition included the land west of the railroad track, as well as east; the petition alleges that the railroad has taken land which is part and parcel of the land therein described, and concludes with a prayer that the damages occasioned by the taking aforesaid may be ascertained. "It is not necessary, in petitions of this kind, to describe in detail the extent of the damage, or the precise mode in which it occurred. It is enough to charge in general terms that a portion or the whole of some lot, specifically described, has been appropriated under legal

authority to the use of the other party." *Pinkerton* v. *Boston & Albany Railroad*, 109 Mass. 527, 535. Without an allegation of special damage, the petition would have been sufficient, and the evidence objected to was entirely competent. It is not to be excluded by reason of an unnecessary specification, although there might have been ground for delay, if the respondents, by reason of the allegation, were not prepared to meet the evidence.

8. The next exception is to the admission of testimony that the land west of the railroad before the taking could have been used for mechanical or wharf purposes, and that it could not be put to any use after the taking. In order to prove damages occasioned to the land of the petitioner which was not taken, but which formed part of the same parcel, it was competent for him to show the uses to which it might profitably be applied, before and after the taking. That is one way of showing the diminution in value caused by the taking. It was evidence of the actual capacity of the land for future improvement as a fact affecting its value. *Presbrey* v. *Old Colony & Newport Railway*, 103 Mass. 1. *Dwight* v. *County Commissioners*, 11 Cush. 201. *Dickenson* v. *Fitchburg*, 13 Gray, 546.

9. The testimony of Minot and Clark was properly rejected. It related in one case to a conversation with the petitioner, at least eleven years after the taking, and in the other, to a conversation at a much later period. It had a tendency to show that, at the time named, there were parties ready to purchase the land west of the track as then constructed. The conversations were in the nature of offers to purchase, made long after the time when the value was to be ascertained. Such offers are not admissible as evidence of value. *Dickenson* v. *Fitchburg*, 13 Gray, 546.

10. Evidence was put in by the respondents as to the feasibility of putting in side tracks, for the purpose of filling the petitioner's land on either side of the railroad. Whether this was admissible or not, it is clear that the evidence introduced by the petitioner, to the effect that filling the land would require the erection by him of expensive retaining walls, might properly be admitted by way of rebuttal. *Treat* v. *Curtis*, 124 Mass. 348.

11. The instructions requested by the respondents, which denied the right of the petitioner to recover damages for obstructing navigable waters, caused by the erection of a bridge across the channel, under the authority of the Legislature, were given as requested.* The instructions, which stated and defined the rights and limitation which attach to the ownership and use of flats, were given as modified and explained by the judge, and were sufficiently favorable to the respondents. They were recognized by the judge, as stating correct propositions, which affected the value of flats generally, but which did not deprive the petitioner of his right to recover for injury done by the location of a railroad over them. When any part of the land is taken, the loss of natural advantages, which give value to the whole parcel, is to be taken into account, although the owner had no exclusive or unconditional right to the same. The right of free access to tide-water is a right the obstruction of which is an element of damage. See *Fitchburg Railroad* v. *Boston & Maine Railroad*, 3 Cush. 58; *Commonwealth* v. *Alger*, 7 Cush. 53; *Presbrey* v. *Old Colony & Newport*

---

* The instructions requested by the respondents, as to the injury to the portions of the petitioner's land not taken by the railroad, were as follows: "1. The Legislature has the right to regulate the use of public navigable waters in this state; and the erection of a bridge across the channel at the place where the railroad bridge was built across the same, under the authority of the Legislature, gave no right to damages to any one who was thereby impeded in using the navigable water. 2. The Legislature may authorize the building of such bridge, with or without a draw, and, in either case, there can be no recovery for the real or supposed injury to private rights caused thereby. 3. The increased difficulty of reaching portions of land or flats by water, by passing up the channel above the bridge, or even a total inability to do so, cannot be considered as an element of damage to the petitioner. 4. An owner of flats holds his legal title subject to the right of the Legislature to fix or change lines within which any structure may be erected, and to such other restraints and limitations as the Legislature may see fit to impose for the preservation and protection of public and private rights. 5. A riparian owner has no right, either as against conterminous proprietors or the public, to have his flats kept open and unobstructed for the free flow and reflow of tide water. 6. The Legislature might, at any time, authorize the channel, by which the land described in the petition is approached, to be either partially obstructed or wholly filled up at any point. The owner of land or flats holds his title subject to this liability, and can maintain no

*Railway*, 103 Mass, 1, 5; *Walker* v. *Old Colony & Newport Rail way*, 103 Mass. 10; *Pierce* v. *Worcester & Nashua Railroad*, 105 Mass. 199; *Ashby* v. *Eastern Railroad*, 5 Met. 368.

12. The jury were properly instructed that, as no rights of crossing the railroad had been reserved or provided for the petitioner, his damages must be assessed as if no such rights existed. *Old Colony Railroad* v. *Miller*, 125 Mass. 1. *Ham* v. *Salem*, 100 Mass. 350. The opportunity which might be afforded to the petitioner to use the cars and tracks of the railroad after its com pletion for filling the flats, and the chance that the corporation might be willing to have side tracks and spurs built for the ac- commodation of his future business, were elements not proper to be considered in the assessment of damages. No privileges ir this respect were specially reserved or secured to the petitioner. His privileges were no greater than the company would be bound as a common carrier to furnish for a reasonable compensation to all persons doing business with it. The favors which the road

---

claim for damages, when the right is exercised either directly or by a cor poration duly authorized."

The judge gave the first two of these instructions as asked for; and the third with this addition: "The mere fact that the road crosses the main channel, either with or without a bridge, standing alone, does not entitle the petitioner to damage if the road does not cross his land, but if the road does cross his land between the portion thereof on the mainland and the channel, cutting him off from the use of that channel which otherwise he could have made in connection with that portion, and that was a valuable use connected with said land, the petitioner is entitled to such damage as he shall prove in accordance with the rules of law which I shall lay down." As to the other rulings requested, the judge instructed the jury as follows: " These propositions may be true as general principles, but they are not altogether applicable to this case. These lands, if taken at all, were taken by a railroad corporation, and the law is that every railroad corporation shall be liable to pay all damages that shall be occasioned by laying out and making and maintaining its road, or by taking any land or materials. And these damages are to be assessed in accordance with the principles which I shall lay down. The fact that flats are subject to the exercise of certain rights and powers, directly or indirectly, by the Legislature, even if these powers have not in fact been exercised, may affect the value generally of flats, but does not affect the obligation of a railroad corporation to pay the damages really occasioned by laying out, making and maintaining its road."

might be willing to grant in the future were a matter of mere speculation and conjecture.*

13. As to interest, the rule is that it is to be allowed from the time of the taking. *Old Colony Railroad* v. *Miller*, above cited. *Reed* v. *Hanover Branch Railroad*, 105 Mass. 303. There is nothing except the agreement of the parties in this case, making the interest to commence with the completion of the road, to take it out of the general rule.

The application for damages was made within the time limited by statute. The laches relied on is the alleged unreasonable delay in prosecuting the suit. But after a suit is commenced, it is in the power of either party to bring it to a trial. It does not appear that the delay in the case was not as much the fault of

---

* The instructions requested by the respondents on this point were as follows: "In considering the question of incidental damages, the jury should take into consideration and allow for such reasonable facilities, either for crossing the tracks, or for the use of tracks or cars of the railroad company for the purpose of filling flats, or for the use of spurs or side tracks for business purposes, on terms mutually beneficial to the parties, as the jury, in the exercise of their practical judgment, think reasonable."

The judge declined to give these instructions; and instructed the jury as follows: "In cases of this kind, compensation is rendered once for all. It is to be estimated according to the full measure of the right acquired by the corporation, and not merely according to the mode and time of the exercise of that right in the first instance. If the corporation would lessen the damages on the ground of any right of crossing the road reserved to, or remaining in, the landowner, it must secure him those rights in the manner pointed out by law; and, as there is no evidence in this case that any such rights have been so secured, damages must be assessed as if no right of crossing the road on the part of the landowner existed. Damages include all injury to the remaining land by cutting off access to, or egress from, different parts of it, or rendering it inconvenient by breaking it up into irregular pieces, or in any manner lessening its suitable uses for occupation as a whole, or for division into lots. As there is no claim that any depot or spur tracks are actually located or constructed, any alleged probability or possibility that any such depot or tracks may some time or other be constructed is not to be considered by the jury in assessing damages. Such possibilities or probabilities are to be altogether excluded. As there is no claim that any rights to use the railroad for the purpose of filling these flats has been reserved or secured in any manner to the 'andowner, any possibility that he may make contracts hereafter with said railroad to use it for the purpose of filling his flats, should be altogether excluded in assessing damages."

these respondents, or of the corporations to whose rights they have succeeded, as of the petitioner.* *Exceptions overruled.*

*C. Allen & A. Lincoln,* for the respondents.

*W. Gaston & W. A. Field,* (*J. C. Coombs* with them,) for the petitioner.

---

* On this point the respondents requested the judge to instruct the jury as follows: "The delay in prosecuting this case has been unreasonable; and the petitioner is not entitled to recover interest during such unreasonable delay. What delay is unreasonable is for the court to determine. The ground on which interest is allowed in cases like the present is, that some time is necessary to enable an owner of land to have his damages judicially ascertained; and therefore interest should only be computed for such time as is reasonable for that purpose. If the court should leave it for the jury to determine what would be an unreasonable delay, the jury should still be instructed not to compute any interest during any delay deemed by them to have been unreasonable."

The judge declined so to instruct the jury; but instructed them as follows: "As the petitioner has consented that interest should be computed from January 1, 1855, (which was after the date of the location and construction of the road,) interest will be computed from that date to the present time."