| 35 | 283 |
|----|-----|
| 57 | 393 |

## THE NEW YORK AND GREENWOOD LAKE RAILWAY COMPANY, appellants,

### *v.*

## THE HEIRS OF HENRY STANLEY, deceased, respondents.

The owners of lands over which the Montclair Railway Company proposed to construct its railroad, entered into an agreement for the occupation and use of their lands, in consideration of the company building a depot on the premises and certain arrangements for the running of trains. The company took possession and built its railroad in 1870, but neglected to build the depot. It became insolvent, and its property and franchises were sold under foreclosure in 1875. In 1878 the same property and franchises were again sold to purchasers, who organized under the general railroad law in the corporate

name of the New York and Greenwood Lake Railway Company. On an ejectment against the latter company, brought by the land owners to recover possession of the land, a bill was filed to stay the prosecution of the suit.—*Held*,

1. That the complainants' right to equitable relief arose out of the equities subsisting between the Montclair Railway Company and the land-owners— possession taken by that company under an agreement which has not been carried out, and the expenditure of money on the faith of that agreement in the construction of a railroad over the premises.

2. That the complainant had only a right to equitable protection against the legal title of the plaintiffs in the ejectment suit, to the same extent and upon the same terms as the Montclair Railway Company would have been entitled to such protection.

3. That the terms on which the complainant is entitled to equitable relief are that the complainant shall pay the value of the land and damages as of the time when the Montclair Railway Company took possession, and interest on such valuation from that time.

4. Paying interest on the value of the land and the damages from the time of the original entry is not paying the debt of the defunct corporation; it is only making the recompense which the land-owners are entitled to have on the enforcement of an equity against them.

5. The expense of making and maintaining additional fences made necessary by the construction of a railroad through the premises, should be included in the damages to be awarded for the lands, where the expense thereof falls upon the land-owner

On appeal from a decree of the chancellor, whose opinion is reported in *New York and Greenwood Lake R. R. Co.* v. *Stanley, 7 Stew. Eq. 55.*

On the 22d of February, 1870, the following agreement was entered into between the Montclair Railway Company and the heirs of Henry Stanley, deceased :

" In consideration of the sum of one dollar to us in hand paid by the Montclair Railway Company, and in further consideration of the benefit to us of the location of a railway depot thereon, we, John G. Stanley, of the township of Caldwell, and William B. Stanley, of the township of Belleville, in the county of Essex, Richard Speer, and Ellen, his wife, of Morristown, in the county of Morris, Austin L. Stanley, of the township of Wayne, James C. Stanley, Thomas B. Stanley, Elizabeth C. Stanley, John H. Stanley, Cornelius N. Stanley and Julia Stanley, of the township of Little Falls, county of Passaic, state of New Jersey, covenant and agree that we will grant, convey,

and release to said company, by a good and sufficient warrantee deed, upon being paid therefor the sum of one dollar, and for the foregoing consideration, all that tract or parcel of land situated in the township of Little Falls and county of Passaic and state of New Jersey, bounded northeast by lands of Edward Francisco, southwest by lands of Joseph S. Bowden, northwest and southeast by lines parallel to and distant fifty feet at right angles from the located centre line of the railway of said company, containing two and one-half acres of land, also an additional width of fifty feet on each side of said land, extending northwestwardly to lands of Edward Francisco, and lands of John H. and Cornelius N. Stanley, from a highway to be laid out across our lands and land of said Francisco, from the Peckman river to the bridge road. Said company to make a lawful fence on each side of said land and maintain the same. Said deed to be upon the condition that the said company shall establish a depot within two hundred feet from said highway to be opened by us, as soon as said railway shall be in operation to the Hudson river, or to any railway connecting with the Hudson river, and shall maintain the same for ten years thereafter.

" And upon the further conditions that said railway shall be begun within two months from this date, and completed so as to be in operation within two years thereafter ; all wood and timber on said lands to be cut and reserved by us, and said company shall stop not less than four passenger trains daily, each way, except Sundays, at said depot, provided that so many are run over said railway for way passengers. And we further agree that said company may enter upon our said lands, and commence the work of construction before the formal conveyance may be executed, they doing no unnecessary damage. And it is further agreed that if the above conditions are not complied with by the said railway company, that this agreement holds said company to all damages if not complied with as above specified."

Under this agreement the company at once took possession and constructed its railroad on the premises, and it and the corporations which have succeeded to its franchises and property have ever since been in possession and use of the premises, as part of their railroad. None of them has performed the conditions named in the agreement.

This bill was filed by the appellants to enjoin the prosecution of an action of ejectment brought against them to recover possession of the premises. From the chancellor's decree giving the complainants relief, but not such as they sought, they have taken this appeal.

*Mr. Cortlandt Parker* and *Mr. R. Wayne Parker*, for appellants.

*Mr. Benj. C. Potts*, and *Mr. Wm. P. Williams* of New York, for respondents, cited :

*Indiana Central R. R. Co.* v. *Hunter, 8 Ind. 74; Parks* v. *City of Boston, 15 Pick. 198; Vanblarcum* v. *State, 7 Blackf. 209; Van Resselaer* v. *Jewett, 2 N. Y. 135; Lewton* v. *D. X. & B. R. R. Co., 20 Ohio St. 401; Gilman* v. *Sheboygan and Fond du Lac R. R. Co., 37 Wis. 317; White* v. *Nashville and N. W. R. R. Co., 7 Tenn. 518; Aiken* v. *Albany, Vt. and Canada R. R. Co., 26 Barb. 289.*

The opinion of the court was delivered by

DEPUE, J.

Whether the agreement between the respondents and the Montclair Railroad Company, of February 22d, 1870, was a valid agreement, is not raised by this appeal. The parties seem to have abandoned or repudiated the agreement. The chancellor held that the circumstances would not warrant a decree of specific performance, and, therefore, refused to make such a decree. From his judicial action in that respect no appeal has been taken.

Nor does the question arise whether the appellants might not have abandoned all rights in the premises which they succeeded to, as the representatives of the Montclair Railway Company, and have proceeded *de novo* to condemn the respondents' lands, in their new corporate name. Under section 57 of the general railroad act (*Rev. p. 917,*) it is possible that in such condemnation proceedings—the respondents' title being in that event divested by the proceedings to condemn—the measure of the land-owners' compensation would be the value of the land at the date of the report of the commissioners, and interest from that time. *Metler* v. *E. & A. R. R. Co., 8 Vr. 222.* No proceedings to condemn have been commenced.

Immediately after the agreement was made between the Montclair Railway Company and the Stanleys, the company entered

into possession and constructed its railroad upon the premises. On the 1st of September, 1870, the company executed and delivered a mortgage on its road and franchises. On November 17th, 1873, a bill of foreclosure was filed, in which proceeding a sale was effected on the 25th of September, 1875. The purchasers organized in the corporate name of the Montclair and Greenwood Lake Railway Company, by articles of association filed October 2d, 1875. The last-named company again mortgaged the railroad and franchises, and on foreclosure of such mortgage, its property and franchises were sold, in October, 1878, and the purchasers at that sale, on the 30th of October 1878, organized as a· corporation, under the present corporate name. These several corporations and their receivers, in the intermediate stages of insolvency, have been in the possession and use of the track laid over the respondents' lands ever since the railroad was constructed on it. The respondents began their ejectment suit in 1879.

The bill sets out the agreement between the Montclair Railway Company and the Stanleys; possession taken of the premises under it; the construction of a railroad upon it, and the continued use thereof, and the injury which would result to the appellants if they were ejected from the property. It contains an offer to perform the agreement of 1870, or to pay the value of the right of way over the respondents' lands and for the use thereof since the appellants have been in possession, as might be deemed equitable, and prays an injunction staying the ejectment suit.

It is apparent that the appellants' right to equitable relief arises out of equities which subsisted between the Montclair Railway Company and the respondents—possession taken by that company under an agreement which has not been carried out, and the expenditure of money on the faith of that agreement, in the construction of a railroad over the premises. On no other hypothesis would the appellants have a standing in court to stay the respondents in the pursuit of their legal remedy. This was the view entertained by the chancellor, upon which his decree was founded. He held that the appellants had

only a right to equitable protection against the respondents' legal title to the same extent and on the same terms as the Montclair Railway Company would have been entitled to such protection, and ordered a reference to ascertain the value of the land and damages as of the time when the land was taken possession of by the Montclair Railway Company, and the allowance of interest on such valuation from that time.

The chancellor's decree conforms to the rule which would have been the correct rule for ascertaining the respondents' compensation for their lands if a bill had been filed by the Montclair Railway Company for the same relief as is sought in this case. *N. H. C. R. R. Co* v. *Booraem, 1 Stew. Eq. 450*. And I think it was correctly applied as against the appellants. The foreclosure and sale of the company's property and franchises under the mortgage did not divest the land-owners' right to compensation for their land, and they are entitled to such compensation from the purchasers at the sale, though the purchasers are created a new corporation; and interest from the time the lands are occupied is part of the compensation which is recoverable in such a proceeding. *Drury* v. *Midland R. R. Co., 127 Mass. 571; Western Pa. R. R. Co.* v. *Johnston, 59 Pa. St. 290; Gilman* v. *Sheboygan R. R. Co., 37 Wis. 317; Dayton X. & D. B. R. R. Co.* v. *Lewton, 20 Ohio St. 401.*

*Trenton Water Power Co.* v. *Chambers*, reported in *1 Stock. 471*, and again in *2 Beas. 199*, is a precedent in point. An examination of the original papers and records discloses the legal similarity of that precedent with the case now in hand. The Trenton Delaware Falls Company was incorporated in 1831, with the usual powers of condemnation. It constructed its raceway over lands of Chambers, by his consent. Afterwards, in 1843, the company became insolvent, and receivers were appointed to take charge of the company's property as an insolvent corporation. On the 15th of February, 1844, an act was passed authorizing the receiver to sell the real estate, franchises and works of the company, clear of all encumbrances, and further providing that the purchasers thereof should hold said works, franchises and real estate as a joint stock company under

the corporate name of the Trenton Water Power Company, in the same manner as the original stockholders held the same. *P. L. of 1844 p. 85.* The property was sold on the 20th of February, 1844, and a new company was organized on the 2d of June, 1844. Chambers, not having been paid for his lands, in 1849 brought an action of trespass against the new corporation. The company filed a bill in equity to restrain the suit at law. In the bill it was averred that Chambers was not entitled to receive compensation for his lands from the new company; that he should seek his redress against the original company. This claim on the part of the company was overruled by the chancellor, and it was ordered and decreed that the complainants should pay the value of the land at the time it was taken, and all damages sustained by reason of the taking thereof, "together with interest on the said value of the said land, and on said damages, from the time of taking of said land." Under the order of reference, the master estimated the value of the lands as of February, 1832, when the survey of the canal over the premises was made, and added interest thereon from that date to the time of the making of his report, being twenty-eight years and three months. The master's report was set aside, as appears by the report of the case in *2 Beas.*, on the ground that the estimation of the master of the value of the land and damages was greater than was warranted by the evidence, but the chancellor's directions as to the mode in which the valuation should be made and interest should be computed, were not set aside or disputed.

The rule adopted in *Chambers* v. *Trenton Water Power Co.*, with respect to the time as of which the value of the land is to be determined, and from which interest is to be calculated, was adopted as the general rule by this court in *North Hudson R. R. Co.* v. *Booræm*, and is in conformity with the decisions in other courts in cases where the original company's property and franchises had been transferred by a judicial sale to purchasers who, by the legislative act, became a new corporation. *Drury* v. *Midland Co.; Western Pa. R. R. Co.* v. *Johnston, supra.* It is, furthermore, a rule which is the necessary result of the doctrine

19

that a land-owner consenting to the occupation of his lands for a railroad before his compensation is ascertained, shall be allowed compensation on the basis of the value of his lands at the time when the entry was made, excluding the value of the structure subsequently put upon them by the company. If the appellants are entitled to take the lands now, on a valuation which shall be referable to the time when the appellants took possession, either as to value or the interest thereon, the entry of the appellants must be considered a new taking; and for such a taking, the value of the lands, with the road-bed and structure, would represent the respondents' damages for property of which they had, by such entry, been divested. The appellants cannot succeed to the advantage of having the road-bed and structure excluded from the valuation of the property taken, unless they assume the place of the Montclair Railway Company with respect to the circumstances under which that company entered into possession. Succeeding to an equity of the Montclair Railway Company, arising out of its entry of the premises, the appellants take the rights of their predecessors *cum onere*, subject to the obligation to render to the respondents the same equity which the Montclair Railway Company would have been required to render, if that company were making an effort to maintain possession. Paying interest on the value of the land, and damages from the date of the original entry, is not paying the debt of the defunct corporation; it is making the recompense which the respondents are equitably entitled to on the enforcement of an equity against them.

The chancellor directed the master to allow the cost of a fence erected by the respondents, with interest from the time it was erected. The expense of making and maintaining additional fences made necessary by the construction of the railroad, should be included in the damages to be awarded for the lands, where the expense thereof falls, as in the present instance, upon the land-owner. *Pierce on Railroads 214; Mills on Em. Domain* § *212; Readington* v. *Dilley, 4 Zab. 209.* Any obscurity in the decree with respect to the mode in which the expense of fencing

should be estimated, can be corrected by application to the chancellor.

*Decree unanimously affirmed.*